

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 23, 2019**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WALTER LEE LITTLE and | § | Case No.: 17-60127-RLJ-7 |
| LINDA LETICIA LITTLE, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| WALTER LEE LITTLE and | § | |
| LINDA LETICIA LITTLE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 17-06003 |
| | § | |
| U.S. DEPARTMENT OF EDUCATION, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION</u>**

Walter and Linda Little, the debtors and the plaintiffs here, seek discharges, under 11 U.S.C. § 523(a)(8), of their collective student loan debts owed to the United States Department of Education (DOE). DOE moves for summary judgment on the basis that the Littles cannot meet the "undue hardship" requirements established in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987), applicable in this circuit by *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003); and thus their complaint fails as a matter of law.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

After reviewing the motion, the Littles' response, DOE's reply, the Littles' sur-reply, and the summary judgment evidence, the Court grants DOE's motion.

**BACKGROUND**

Mr. and Mrs. Little are husband and wife and are both 58 years old. Mr. Little currently does not work but receives disability payments; Mrs. Little works at Chick-Fil-A. They have no dependents. The Littles filed their joint chapter 7 bankruptcy petition on September 11, 2017.

Mr. Little first obtained a student loan to attend truck driving school in 1991. Exs. USAO 0011, lines 15–23; USAO 0091–0092. He obtained his commercial driving license but was unable to secure a truck driving job. Ex. USAO 0012, lines 3–25. This loan was paid-off in 1999 and is not subject of this matter. Mr. Little worked for AT&T from 1994 until he quit in 2008 because, he says, of union harassment. Ex. USAO 0013, lines 21–25. He worked odd jobs until 2011 when he was hired by Suddenlink. In 2014, Mr. Little left Suddenlink because he became bored with the job. Ex. USAO 0021, lines 11–17. He then worked in the insurance business until 2018. Exs. USAO 0021, lines 22–25; USAO 0023, lines 1–19.

Starting in 2006, Mr. Little took out several student loans to attend various community colleges, on and off, through 2016. Exs. USAO 0014, lines 16–23; USAO 0015, lines 17–20; USAO 0017, lines 3–25. Sometime in 2016, Mr. Little began experiencing health issues. Ex. USAO 0023, lines 24–25. He never received a degree from any of the community colleges. Exs. USAO 0015, lines 7–10; USAO 0016, lines 15–16; USAO 0017, lines 18–19; USAO 0018, lines 9–11. As of December 8, 2017, Mr. Little owes DOE $74,657.15, plus interest accruing from December 8, 2017 to date. Ex. USAO 0093.

Mrs. Little attended a community college for several years after graduating from high school but never received a degree. Ex. USAO 0146, lines 1–14. She worked for AT&T for 20 years, leaving in 2004. Exs. USAO 0147, lines 7–9; USAO 0148, lines 8–14. Starting in 2006, Mrs. Little began taking out student loans to attend various community colleges on and off until 2016. Ex. USAO 0151, lines 11–13. She never received a degree from any of the community colleges she attended. Ex. USAO 0152, lines 2–7. As of December 12, 2017, Mrs. Little owes DOE $68,918.03, plus interest accruing from that date until now. Ex. USAO 0193.

The Littles filed this adversary proceeding on December 11, 2017. They received their chapter 7 discharges on January 4, 2018. On June 21, 2019, DOE filed the Motion for Summary Judgment. In support of the Motion, DOE includes deposition testimony of the Littles and documentary evidence obtained during discovery. The Littles filed their response to the Motion on July 8, 2019. They rely on several documents: their bankruptcy schedules I and J, various medical documents, food stamp documentation (which they no longer receive), and public housing documentation. DOE filed its reply on July 22, 2019, arguing that the Littles' response fails to identify any disputed material fact on issues for which the Littles bear the burden of proof. The Littles filed their sur-reply on August 15, 2019, and included further documentation

to support their case: a letter from DOE for an income-based repayment plan, a letter from the Social Security Administration regarding Mr. Little's disability benefits, and documentation of Mrs. Little's recent medical bill.

**DISCUSSION**

Summary judgment is appropriate where the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] The initial burden is on the movant; where, like here, the nonmovant bears the burden of proof at trial, the movant must either point out the absence of evidence or undermine evidence of the nonmovant that is essential to one or more elements of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If successful, the burden then shifts to the nonmovant to establish a genuine issue as to a material fact. *Id.* at 324. A genuine issue exists when, through evidence offered by the nonmovant, a rational fact finder could, at trial, find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, not every disputed fact is material in light of the substantive law that governs the case. *See id.* This requires something more than conclusory allegations, improbable inferences, unsupported speculation, or metaphysical doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993). A court must draw all *reasonable* inferences in favor of the nonmovant. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

Section 523(a)(8) of the Bankruptcy Code excludes "educational" loans from the discharge granted under § 727, "unless excepting such debt from discharge would impose an

[1] The rule is applicable to adversary proceedings in the bankruptcy court pursuant to the Federal Rule of Bankruptcy Procedure 7056.

'undue hardship' on the debtor and the debtor's dependents." *Russ v. Tex. Guaranteed Student Loan Corp. (In re Russ)*, 365 B.R. 640, 644 (Bankr. N.D. Tex. 2007). Traditionally, education loans were discharged along with other unsecured prepetition debts. Richard B. Keeton, *Guaranteed to Work or It's Free!: The Evolution of Student Loan Discharge in Bankruptcy and the Ninth Circuit's Ruling in* Hedlund v. Educational Resources Institute Inc., 89 AM. BANKR. L. J. 65, 74 (2015). Concern over student-loan-discharge abuse by newly graduated doctors and lawyers motivated Congress to pass the Education Amendments Act in 1976, which, absent "undue hardship," barred discharge of a federally guaranteed student loan obtained within five years of a bankruptcy filing. *Id.* at 75. Such provision became a part of the Bankruptcy Code with the Bankruptcy Reform Act of 1978. *Id*. Then, in 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act incorporated *all* qualified educational loans—public and private—into this provision. *Id*. Student loans, as with the other eighteen exceptions to discharge in § 523(a), "reflect a conclusion on the part of Congress that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start." *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998) (quotation and citation omitted).

The courts' struggles with this provision stem from the Bankruptcy Code's failure to define "undue hardship." *See, e.g., Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 753 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987). The courts agree, however, that Congress intended something greater than "garden-variety hardship." *Id.* Various tests have thus been developed to gauge undue hardship, with most adopting the test from *In re Brunner*—the Fifth Circuit included. *See Gerhardt*, 348 F.3d at 91 ("Because the Second Circuit presented a workable approach to evaluating the 'undue hardship' determination,

this court expressly adopts the *Brunner* test for purposes of evaluating a Section 523(a)(8) decision.").

The test from *Brunner* requires a three-part showing *from the debtor*:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *Brunner*, 831 F.2d at 396). The test is conjunctive; a debtor's failure to satisfy any of the prongs means the debtor cannot establish that the student loans are an undue burden, and the student loans cannot be discharged. *In re Teague*, No. 16-03007, 2017 WL 187557, at *2 (Bankr. N.D. Tex. Jan. 17, 2017). The *Brunner* test "must be strictly construed," and "equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis." *In re Dorsey*, No. 13-1047, 2015 WL 5992118, at *3 (Bankr. E.D. La. Oct. 13, 2015) (quoting *In re Kuznicki*, 483 B.R. 296, 300 (W.D. Pa. 2012)). To do otherwise would go against Congress's intent to make student loan debt discharges available only in exceptional circumstances.

While many courts have observed that the *Brunner* test is harsh and at times too demanding, *In re Turturo*, 522 B.R. 419, 425–26 (Bankr. N.D.N.Y. 2014), the Fifth Circuit continues to follow this standard and has reaffirmed its adherence to the test as recently as July 30, 2019. *Thomas v. Dep't of Educ. (In re Thomas)*, 931 F.3d 449 (5th Cir. 2019).

**Prong One: Minimal Standard of Living**

The first prong under the *Brunner* test is whether a debtor can maintain a minimal standard of living for himself and any dependents based on current income and expenses if forced to repay the student loan. The court considers the debtor's present living standard that

appears from the record and whether the forced repayment of the student loan obligation would prevent the debtor from maintaining a minimal standard of living. *See, e.g.*, *Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66, 70 (Bankr. M.D. La. 2006). The Bankruptcy Code does not, however, "require that the debtor live in abject poverty before a student loan may be discharged." *O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, No. 12-03281, 2013 WL 2905275, at *3 (Bankr. S.D. Tex. June 13, 2013).

The Littles have provided sufficient evidence to preserve a factual dispute on whether their income will be sufficient for them to maintain a minimal standard of living. DOE argues that the Littles have approximately $350 every month after living expenses are paid for with their current monthly income. DOE relies on deposition testimony but erroneously used gross income from Mrs. Little's paycheck to make their calculation. The Littles submit that their disposable income is only $19. *See* Exs. V, W.

Upon review of the pleadings and the summary judgment evidence, the Court is satisfied that genuine issues of fact persist on the question of whether the Littles' current financial situation prevents them from paying back their student loans while maintaining a minimal standard of living.

**Prong Two: Persisting State of Affairs**

The second prong—that "additional circumstances exist indicating that [the debtors'] state of affairs is likely to persist for a significant portion of the repayment period of the student loans," *Brunner*, 831 F.2d at 396—goes to the "heart of the *Brunner* test" and is meant to be a "demanding requirement." *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005); *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001). The "additional circumstances" are those "that [impact] the

debtor's future earning potential but which were either not present when the debtor applied for the loans or have since been exacerbated." *Gerhardt*, 348 F.3d at 92 (quoting *In re Roach*, 288 B.R. 437, 445 (Bankr. E.D. La. 2003)). This element is prospective: the hardship must be "likely to persist for a significant period of time." *Id.* (quoting *Brunner*, 831 F.2d at 396). Proving that the debtor is currently having financial difficulties is not enough; rather the debtor must show "a total incapacity in the future to pay his debts for reasons not within his control." *Id*. (quoting *In re Faish*, 72 F.3d 298, 307 (3d Cir. 1995)). Put another way, *Brunner* requires "a certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005). A court should examine a debtor's "age, education, work history, health, assets, ability to obtain a higher paying job or reduce expenses, and other circumstances" in determining whether a debtor's financial situation is likely to improve. *Educ. Credit Mgmt. Corp. v. Pratt (In re Pratt)*, 375 B.R. 753, 761 (S.D. Tex. 2007). The Littles submit that their current income, Mr. Little's poor health, and their ages (late 50s) are "additional circumstances" that satisfy this prong. But they failed to submit supporting evidence to "demonstrate insurmountable barriers to [their] financial recovery and ability to pay." *Educ. Credit Mgmt. Corp. v. Nys (In re Nys)*, 446 F.3d 938, 946 (9th Cir. 2006).

The additional-circumstance prong is not satisfied if a debtor has untapped earning potential. *See, e.g.*, *In re Thomas*, 931 F.3d 449 (holding that an unemployed 62-year-old debtor with diabetic neuropathy was capable of employment in sedentary work environments, creating income, and failed *Brunner*'s second prong); *Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795 (E.D. Tex. 2007) (debtor had not maximized his income, despite being employed, because he failed to obtain a Texas law license); *Jones v. Bank One Tex.*, 376 B.R. 130 (W.D. Tex. 2007)

(debtor's reliance on her age and dependent was insufficient because she was unemployed and could obtain at least a part time job).

The evidence does not prove that the Littles are *not* currently maximizing their income; and DOE does not argue that the Littles have untapped earning potential. DOE has proved, however, that the Littles' income will increase within a few years. The Littles do not dispute that their income will increase by $900 per month when Mr. Little's disability payments are no longer garnished for back child-support pay. Ex. USAO 0009, lines 5–17. Besides, "a debtor cannot accumulate arrears by failing to fulfill domestic support obligations and then attempt to use that financial burden to justify discharging student loans." *Shenk v. U.S. Dep't of Educ. (In re Shenk)*, 603 B.R. 671, 681 (Bankr. N.D.N.Y. 2019). Within seven years, both Mr. Little and Mrs. Little will be entitled to their pension from AT&T. Mr. Little will receive about $850 per month. Ex. USAO 0014, lines 7–8. Mrs. Little will receive a little more than $700 per month. Ex. USAO 0147, lines 1–3. These future increases in income are also undisputed by the Littles.

Mr. Little received a $27,800 lump sum payment for disability backpay in December of 2018. Ex. USAO 0027, lines 17–25. While the Littles argue that this money should be used to create a savings plan, "Congress, through its demanding standard, has chosen to give priority to the repayment of student loan debts." *Young*, 376 B.R. at 800 (discussing how a contribution to a retirement plan was incompatible with the undue hardship standard Congress chose to apply to student loan discharges). These funds can be (or could have been) used for student loan payments.

For health-related issues, the debtor is not required to "prove the existence of a completely debilitating medical condition in order to establish an 'undue hardship' under § 523(a)(8)." *O'Donohoe*, 2013 WL 2905275, at *4 (citing *McGinnis v. PHEA (In re*

*McGinnis)*, 289 B.R. 254, 256 (Bankr. M.D. Ga. 2002)). To satisfy the *Brunner* test, the debtor need only demonstrate that some condition will likely inhibit their long-term ability to repay the student loan. *Id.* Such condition or incapacity cannot be self-imposed. Mr. Little says that he suffers from a variety of medical conditions. Those medical conditions, though, do not prevent Mr. Little from collecting disability payments or pension payments.

Last, the Littles argue that they are getting older and that Mrs. Little might lose work in the future due to illness. A general health decline, however, is not an "additional circumstance." *Educ. Credit Mgmt. Corp v. Blake (In re Blake)*, 377 B.R. 502, 507–08 (E.D. Tex. 2007). The Littles chose to go to school later in life; the repayment of debts will thus last into their later years. *Jones*, 376 B.R. at 139. Age also does not prevent the Littles from collecting pension payments; instead, their monthly income should increase upon turning 65.

There is no indication from the record that the Littles have an additional circumstance that would make them unable to pay *anything* on their student loan debt in the coming years. DOE has submitted and cited to sufficient uncontested evidence in the record that the Littles' financial circumstances will improve in the coming years. The Littles have failed to rebut DOE's evidence and have thus failed to carry their burden under the second prong of *Brunner*.

**Third Prong: Good Faith Effort to Repay**

The good faith prong requires a court to "consider the [d]ebtor's efforts to obtain employment, maximize income, and minimize expenses." *Russ*, 365 B.R. at 645 (internal quotations omitted). The "overarching inquiry" is whether the payment delinquency "is the result of factors beyond [the debtor's] control." *Gnahoua v. Dep't of Educ. (In re Gnahoua)*, No. 14-5020, 2016 WL 1238831, at *2 (Bankr. N.D. Tex. Mar. 28, 2016). While this inquiry

overlaps with the second prong, "the primary focus of the third prong is on the debtor's repayment efforts." *O'Donohoe*, 2013 WL 2905275, at *5.

Evidence exists on both sides for this prong. Mrs. Little has made a good faith effort to gain employment and maximize income. Mr. Little paid-off a student loan for truck driving school, unrelated to the ones at issue here, in 1999. Ex. Y. On the other hand, he has quit two jobs, once because he felt harassed by a union and once because the job he had stifled his creativity. Exs. USAO 0013, lines 21–25; USAO 0021, lines 11–17. Mr. Little has also never applied for a disability discharge with DOE. Ex. USAO 0056, lines 19–25. He did apply for an income-based repayment plan that was approved on March 16, 2013. Ex. Z. The plan was to last for one year and then be reevaluated based on his income the following year. *Id.* There is no evidence that Mr. Little participated in the plan once approved or that he otherwise pursued this plan. Mr. and Mrs. Little have both consolidated their student loans and sought forbearances. And though Mr. Little received the disability backpay of $27,800, he and Mrs. Little still argue that they should not be forced to pay-back *any* of the loans. *See United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir. 1998) (finding good faith where the debtors used back disability benefits of $8,000 to pay-down portions of debts and bought a 20-year-old car).

The Littles fail to meet the good faith standard. Mr. Little has failed to make a single payment on any of his current loans. The loans were first taken-out thirteen years ago. He has only shown that he *applied* for an income-based repayment plan. Mrs. Little has also failed to make any payments on her current loans. While "failure to make a payment, standing alone, does not establish a lack of good faith," *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir. 2004), courts have found that "without reasonable efforts to make subsequent

payments, requesting deferments and forbearances alone does not establish good faith." *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 327 (4th Cir. 2008); *Tuttle v. Educ. Credit Mgmt. Corp. (In re Tuttle)*, 600 B.R. 783, 805 (Bankr. E.D. Wis. 2019) ("But obtaining a deferment does not necessarily evidence good faith, when it is not followed by payment or a significant effort to work out a payment schedule."); *see also Justice v. Educ. Credit Mgmt. Corp. (In re Justice)*, No. 15-01083, 2016 WL 6956642, at *5–6 (Bankr. N.D. Miss. Nov. 28, 2016) (finding bad faith despite debtor obtaining deferments and forbearances). Like Mr. Little, Mrs. Little first took-out her loans thirteen years ago. The Littles failed to offer supporting evidence that Mrs. Little has acted in good faith, other than that she is currently working. The Littles assert that health problems that come with age should excuse Mrs. Little from repayment, but Mrs. Little was older when she went back to school and knew she would have to make payments in her later years. Mrs. Little has not made a good faith effort to pay her loans. And she has never applied for an income-based repayment plan. *See Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 919 (B.A.P. 9th Cir. 2013) (noting that a debtor's refusal to enroll in an Income-Based Repayment Plan cannot be "discount[ed]" and has "often tipped the good faith balance against a debtor"). Additionally, both Mr. Little and Mrs. Little stopped attending school in 2016. They filed for bankruptcy the next year, just weeks before the first payments on their consolidated loans came due. Exs. USAO 0095; USAO 0098; USAO 0196; USAO 0198; USAO 0201. This, too, does not reflect a good faith effort. *See, e.g.*, *Perez v. U.S. Dep't of Educ. (In re Perez)*, No. 17-2136, 2018 WL 1037408, at *7–8 (Bankr. E.D. Cal. Feb. 20, 2018) (considering timing of the debtor's attempt to have student loan discharged, debtors acted in bad faith when the deferred student loan entered repayment status in 2015, the year after

graduation, and filed bankruptcy soon thereafter in December 2016). The Littles have failed to establish that they have made a good faith effort to repay their student loans.

The Littles fail the third prong of the *Brunner* test.

## CONCLUSION

By its motion, brief, and supporting evidence, DOE proved the absence of essential elements—additional circumstances and good faith efforts—of the Littles' claim of undue hardship. And, by their response, the Littles have failed to raise a genuine issue of material fact in support of these required elements of undue hardship. DOE's motion for summary judgment will be granted.

### End of Memorandum Opinion ###